BRYCE A. DODDS (SBN 283491)
**THE LAW OFFICE OF BRYCE A. DODDS**
100 E. San Marcos Blvd., Suite 400
San Marcos, CA 92069
Tel. No.: (760) 593-7353
Fax No.: (760) 593-4845
bdodds@brycedoddslaw.com

Attorney for Plaintiff Marianna Moncreiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MARIANNA MONCREIFF, an individual,

       Plaintiff,

   v.

SAN DIEGO UNIFIED SCHOOL DISTRICT,

       Defendant.

CASE NO.: **'19CV1030 GPC LL**

**COMPLAINT FOR DAMAGES**

1. Title IX – Deliberate Indifference

2. Title IX – Retaliation

3. Disability Discrimination
   (Cal. Gov't Code § 12940(a).)

4. Failure to Accommodate
   (Cal. Gov't Code § 12940(m).)

5. Failure to Engage in a Good Faith Interactive Process
   (Cal. Gov't Code § 12940(n).)

6. Retaliation
   (Cal. Gov't Code § 12940(h);

7. Failure to Prevent Discrimination, Harassment, and Retaliation
   (Cal. Gov't Code § 12940(k).)

DEMAND FOR JURY TRIAL

-1-

COMPLAINT FOR DAMAGES

**Introduction**

1. Plaintiff Marianna Moncreiff brings this action to redress unlawful employment practices committed under Title IX of the Education Amendments of 1972; and state-law-related claims against defendant San Diego Unified School District ("SDUSD").

2. Specifically, SDUSD has subjected Ms. Moncreiff to students' abusive remarks and drawings and threats of sexual assault. SDUSD has refused to take any meaningful action to prevent or correct such harassment and has failed to develop or implement policies for reporting and remedying such harassment. SDUSD, through its inaction, also subjected Ms. Moncreiff to an employer who refuses to take any action to rectify the situation, discriminates against her because of her disability, and fails to engage in a good faith interactive process, accommodate her, and prevent harassment, discrimination, and retaliation.

**The Parties**

3. Ms. Moncreiff is, and at all relevant times was, a citizen of the United States of America and the State of California, and a resident of the County of San Diego, State of California.

4. SDUSD is a public school district as defined in California Government Code section 905 of the California Education Code of the State of California. On information and belief, at all material times, SDUSD received federal funding, as contemplated by Title IX, Title 20, United States Code section 1681, *et seq.*

**Jurisdiction and Venue**

5. This Court has federal question jurisdiction over this action under Title 28, United States Code sections 1331.

6. This Court has supplemental jurisdiction over Ms. Moncreiff's state-law claims under 28 United States Code section 1367(a).

COMPLAINT FOR DAMAGES

7.   The Court has personal jurisdiction over SDUSD as SDUSD has intentionally availed itself of the benefits of the State of California and each school within SDUSD, including Hoover High School, is located in San Diego County in the State of California. SDUSD has sufficient minimum contacts with the State of California so as to render the exercise of personal jurisdiction over SDUSD proper.

8.   Venue is proper in this district under Title 28, United States Code section 1391(b) because at least one defendant resides in this district and the events and conduct giving rise to Ms. Moncreiff's claims in this action occurred in this district, in the city and county of San Diego in the State of California.

## Administrative Prerequisites

9.   On November 5, 2018, Ms. Moncreiff filed a "San Diego Unified School District Employee Complaint Alleging Harassment or Discrimination," detailing facts described below.

10. On April 15, 2019, Ms. Moncreiff filed a "Claim against the San Diego Unified School District," exhausting administrative prerequisites to filing a civil complaint in court under the California Government Tort Claims Act. On April 22, 2019 and April 25, 2019, SDUSD sent right to sue notices to Ms. Moncreiff.

11. On May 31, 2019, Ms. Moncreiff filed a complaint with the Department of Fair Employment and Housing and received her immediate right to sue letter.

## Factual Background

12. For approximately four years, Ms. Moncreiff has worked as a high school math teacher for SDUSD, teaching 9th and 10th grade students at SDUSD's Hoover High School, located at 4474 El Cajon Blvd., San Diego, CA 92115. Since the beginning of Ms. Moncreiff's employment, SDUSD students at Hoover High School have sexually harassed her, engaging in and directing at her sexually harassing and explicit images as penises ejaculating at her face, and threats of sexual assault.

COMPLAINT FOR DAMAGES

13. For example, on October 19, 2018, when, at the end of her third period class as students handed her their assignments, Ms. Moncreiff picked up a note that fell from her desk, a note which referred to her as a bitch twice before stating: "She is boutta suck dick…bitch."

14. After finding this note, Ms. Moncreiff became concerned for her safety and considered the note a threat of sexual assault from an unknown student in her class.

15. Ms. Moncreiff stayed calm, though she was extremely alarmed and nervous, telling students something like, "Whoever wrote this, I hope you are proud of yourself." Ms. Moncreiff waited until the students cleared the classroom for lunch and then e-mailed the note to Terrance Johnes ("Johnes"), Hoover High School's Dean of Students; Jason Babineau ("Babineau"), Hoover High School's Principal; and Diane Conti ("Conti") and Erica Barcelo-Carrillo ("Barcelo"), Hoover High School's Vice Principals, pointing out this is not the first time students have sexually-harassed her as they were well aware of and she considers the note to be a threat of sexual assault.

16. Ms. Moncreiff then ventured from her classroom and saw Barcelo, showed Barcelo a photograph of the note, stated she considered it a threat to commit sexual assault against her, and informed her she responded to the note by telling the students something like, "Whoever wrote this, I hope you are proud of yourself."

17. Barcelo told Ms. Moncreiff she should not have admonished the students because whoever wrote the note was looking for attention. Barcelo never responded to Ms. Moncreiff regarding the note or the sexual harassment and threat again.

18. Around two hours after, Johnes responded to Ms. Moncreiff by e-mail, stating only: "Do you have any idea who wrote this?" Ms. Moncreiff first responded she did not know, but then offered the names of two students the following Monday morning. Johnes responded: "Is it possible it was written during a different period and just discovered 3rd?" Ms. Moncreiff responded it was possible.

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19. Neither Johnes, Babineau, Conti, nor Barcelo took any action that day to investigate Ms. Moncreiff's complaints; they did not visit her classroom and did not speak with the students. In fact, neither Johnes, Babineau, Conti, nor Barcelo seemed to take Ms. Moncreiff's complaints seriously, particularly considering Johnes shirked his responsibility and put the onus on Ms. Moncreiff alone to investigate; Babineau and Conti had not responded to her e-mail; and Barcelo told her she should not have addressed the sexual harassment with the students.

20. Johnes's, Babineau's, Conti's, and Barcelo's indifference to Ms. Moncreiff's complaints are consistent with the way SDUSD and Hoover High School administrators, such as Babineau, have responded to students harassing teachers sexually or otherwise before October 19, 2018. One such example of their indifference manifested when students placed a note with a drawing of a penis on it on Ms. Moncreiff's chair. Ms. Moncreiff unknowingly sat on the note, causing students to laugh and mock her.

21. As a result, Johnes's, Babineau's, Conti's, and Barcelo's failure to take any action to address the October 19, 2018 sexual harassment incident described above left Ms. Moncreiff disappointed, disturbed, and unprotected. Ms. Moncreiff was concerned for her safety as she taught Hoover High School's students that day.

22. Around four days later, Babineau finally acknowledged Ms. Moncreiff's e-mail, stating: "Hi, Ms. Moncreiff, Checking in on this. Any leads? Really sorry it happened. Want to be able to support you. Please let me know. Thank you. Jason." Babineau, like Johnes, put the onus on Ms. Moncreiff alone to investigate.

23. Ms. Moncreiff spent that morning teaching, still worried, nervous, very uncomfortable, and concerned for her safety. She informed her third period class the note she received the previous Friday was not okay and was not a joke. As she walked around the class, she found a detention slip with drawings of penises on it with her name and the words, "Not okay! not okay!" at a desk with four students. She questioned the students about which of them was responsible. No one confessed.

COMPLAINT FOR DAMAGES

1  24. Ms. Moncreiff then e-mailed a copy of the note to Johnes, Babineau, Conti,

2  and Barcelo, and asked them to come to the class and talk to the students.

3  25. Between about 5 to 10 minutes later, Johnes entered Ms. Moncreiff's

4  classroom. Ms. Moncreiff handed him the detention slip and left the room in tears.

5  26. Ten minutes later, Ms. Moncreiff met with Babineau in the library and shared

6  with him her experiences with being sexually harassed at Hoover High School,

7  including, but not limited to, finding a drawing on a desk with a sexually-explicit

8  picture of a penis ejaculating on a face with an arrow and her name pointing at the

9  face and the picture of a penis on her chair; she cried, described her distress, and said

10  she no longer wanted to work at Hoover High School.

11  27. Shortly after, Ms. Moncreiff exited the library and encountered Johnes.

12  Johnes told her he spoke with the class, but did not learn who wrote the note. He

13  explained he and the class spoke about the "classroom climate," creating the

14  inference that if she ran her classroom differently, the students would not sexually

15  harass her. Ms. Moncreiff left the school after this conversation and has not

16  returned.

17  28. On October 24, 2018, Ms. Moncreiff e-mailed SDUSD's Superintendent

18  Cindy Marten, Chief of Staff Staci Monreal, and Chief of Business Officer Gregory

19  K. Ottinger and informed them of the sexual harassment described above.

20  29. The same day, Ms. Moncreiff e-mailed the District Human Resource

21  representative Darin Noyes ("Noyes"), explained the sexual harassment she has

22  been experiencing and requested a leave of absence. Noyes referred Ms. Moncreiff

23  to Josue Diaz Jr. ("Diaz"), the Human Resources officer assigned to her.

24  30. Also, that day, Ms. Moncreiff e-mailed Lynn Ryan ("Ryan"), Title IX

25  Coordinator & Uniform Complaint Compliance Officer for SDUSD, to report the

26  sexual harassment and threat described above; to inquire about whether teachers are

27  protected under Title IX when sexually-harassed by students; and for help seeking

28  corrective action.

COMPLAINT FOR DAMAGES

31. Also, that day, Ms. Moncreiff spoke on the telephone with Ryan, detailing the sexual harassment she has experienced throughout her employment and asking her what the next steps are. Ryan could not explain and did not know what the process would be, even though she is the Title IX Coordinator, but said she would make some calls.

32. After several days of Ms. Moncreiff asking whether teachers are protected from student sexual harassment under Title IX, Ryan finally relented from avoiding her question and finally informed her teachers are indeed protected from student sexually harassing them under Title IX.

33. Then, after initiating and exchanging e-mails with Diaz, Ms. Moncreiff completed an "Intake Application for Interactive Meeting Process" on November 3, 2019. In it, Ms. Moncreiff informed SDUSD she suffered from anxiety as a result of the incidents, i.e. sexual harassment and hostile work environment, and the lack of interest, concern, or even sympathy from SDUSD, Johnes, Babineau, Conti, Barcelo, Noyes, Diaz, Ryan, by her doctor's note and by stating:

> I am not able to concentrate on my lessons due to the fear of further sexual harassment at Hoover High School. I am worried about further sexual harassment at my current work environment instead of being focused on teaching my students. I have anxiety when coming to class, which becomes exacerbated when certain students are present.

34. Ms. Moncreiff also indicates she asked Babineau to complete the "Supervisor's Statement" for the "Intake Application for Interactive Meeting Process," but he had not. In it, she states:

> The administration at Hoover High School needs to protect its teachers from sexual harassment, which it does not do. The administration at Hoover High School also needs to promptly investigate claims of sexual harassment (especially regarding teachers) which it currently does not do. The administration at Hoover High School needs to treat its teachers as equal to its students, and not favor the students over the teachers.
>
> . . .

COMPLAINT FOR DAMAGES

> Due to the trauma I've suffered repeatedly at Hoover High School, my health care providers have recommended moving to a different school close to my home to perform my essential job duties. I am willing to accept other job positions within the school district.

35. On November 4, 2018, Babineau e-mailed Ms. Moncreiff, claiming he did not realize when Ms. Moncreiff asked him to complete the Supervisor's Statement for the "Intake Application for Interactive Meeting Process," Ms. Moncreiff was seeking an accommodation. This, even though Ms. Moncreiff informed him of her condition before she asked him to complete the Supervisor's Statement; he knew Ms. Moncreiff was requesting a leave of absence for her condition; and he should have no confusion about the purpose of the Interactive Meeting Process in his role at Hoover High School and his interactions with Diaz.

36. On November 5, 2018, Ms. Moncreiff received a "Sexual Harassment Investigation and Outcome Notification" letter from Babineau. While ignoring the source of Ms. Moncreiff's anxiety, stress, and PTSD—in part, Hoover High School—Babineau informed Ms. Moncreiff he would accommodate her by conducting sexual harassment training with all students in Ms. Moncreiff's classes; an administrator sitting in for part or all of her third period class to monitor and offer assistance for the first week of her return; then, an administrator checking in with her at the end of every third period class until the end of the semester and then weekly to ensure no further incidents occur or to handle any that have occurred. But again, this did not accommodate her injuries as her doctor expressed in a note Ms. Moncreiff provided Babineu. And, when Ms. Moncreiff asked Babineau whether SDUSD provided her students with sexual harassment training—the accommodation at the top of his list—he did not respond.

37. On December 14, 2018, Ms. Moncreiff, her representative Jeffrey Hogue, and Diaz met in person to discuss accommodating Ms. Moncreiff.

///

///

COMPLAINT FOR DAMAGES

38. After the meeting, Diaz sent Ms. Moncreiff a letter conveying his account of what took place at the accommodation meeting. Diaz confirmed Ms. Moncreiff conveyed she could perform the essential duties of her position, but not at Hoover High School, the source of her stress, anxiety, and PTSD. In his letter, Diaz also confirmed:

> We discussed that you would be eligible to fill a vacant position for which you were qualified. We discussed that you may be qualified for various positions and that you should monitor the District's website and apply for positions for which you believe you are qualified. We discussed the Post and Bid process, the district's transfer process, and the Employee Assistance Program (EAP) which is a confidential service designed to help members resolve personal and workplace challenges.

39. Diaz neglects to mention in his letter Mr. Hogue informed him that requiring Ms. Moncreiff to check the SDUSD website for available positions did not satisfy SDUSD's duty to engage in the interactive process in good faith. Diaz was indifferent and held firm to his position that if Ms. Moncreiff wants to transfer, she needs to check the SDUSD website for available positions and apply using SDUSD's transfer process.

40. Diaz neglects to mention in his letter that during the accommodation meeting, Ms. Moncreiff had to press Diaz to permit her to call him weekly to see if any positions were available considering he put the obligation on Ms. Moncreiff to search for open positions. Diaz has not reached out to Ms. Moncreiff once in any attempt to accommodate her and Diaz has never initiated any communications with Ms. Moncreiff.

41. Diaz also neglects to mention in his letter that during the accommodation meeting, he informed Ms. Moncreiff two positions as a "Resource Teacher" Ms. Moncreiff was qualified and able to perform became available since she left Hoover High School, but he filled those positions already.

///

///

COMPLAINT FOR DAMAGES

42. Diaz also neglects to mention in his letter he informed Ms. Moncreiff during the accommodation meeting he spoke with Babineau and concluded that sometimes relationships do not work out and it can be best just to move on and then try to repair the relationship, suggesting Babineau does not want Ms. Moncreiff to return to Hoover High School or to accommodate her. After all, since Ms. Moncreiff complained about sexual harassment, Babineau has made no good faith attempt to assist Ms. Moncreiff. Rather, Babineau has e-mailed Ms. Moncreiff to inform her students and parents were complaining about grades, insinuating Ms. Moncreiff was doing something wrong and should instead be at school paying attention to the students' grades. Babineau had never raised the issue of grades before Ms. Moncreiff complained about sexual harassment less than two weeks before. Babineau never provided any clarification about which students and parents were complaining, but Babineau never responded to Ms. Moncreiff's request.

43. On December 19, 2018, Ms. Moncreiff e-mailed to Diaz and Babineau her doctor note permitting her to return to work at SDUSD on January 8, 2019, just not to Hoover High School.

44. On December 21, 2018, Diaz e-mailed Ms. Moncreiff, copying Ryan on the e-mail, and indicates and suggests Ms. Moncreiff can fulfill her job duties as a teacher, just not at Hoover under her doctor's note, and because she is a teacher at Hoover High School, Ms. Moncreiff, if she wants to return to work, would need to look for an apply for jobs within SDUSD she feels she is qualified for herself.

45. On December 21, 2018 at 1:23 p.m., Ms. Moncreiff responded, stating:

> You are incorrect. My physician approved me to return to work as of January 8, 2019. The only restriction was that I could not return to Hoover High School. This is understandable since Hoover High School has become a hostile place to work because of the sexual harassment and the fact that there is nothing done to stop it.
>
> It is completely unacceptable that because of Hoover High School and SDUSD's Title IX violations that I am without a job through no fault of my own. I did nothing wrong. I never asked to be sexually harassed. I am entitled to work in a safe environment. That's all I ask. Because of SDSUD's Title IX violations I have to sit home and am

-10-

COMPLAINT FOR DAMAGES

without work without pay. I'm being treated unfairly and retaliated against because I finally spoke out and complained about the sexual harassment that goes on at Hoover High School on almost a daily basis.

Again , I would like the opportunity to work in *any* position. Please work in good faith to interact with me to find another job within SDUSD.

46. Also, on December 21, 2018, Ms. Moncreiff e-mailed Diaz and Ryan and made clear she can return to work for SDUSD on January 8, 2019, just not to Hoover High School, the source of her stress, anxiety, and PTSD, and is ready to do just that.

47. On December 28, 2018, Ms. Moncreiff e-mailed Ryan, asking for a meeting, reminding Ryan of her sexual harassment complaint and explaining she believes she is experiencing retaliation for complaining about being sexually harassed.

48. On January 7, 2019, Ryan responded to Ms. Moncreiff, stating:

Yes, I recall your report of sexual harassment. You received a letter from Mr. Babineau outlining supports for your return to work. In the letter, you were informed you could file a formal complaint and did so via AP 7110. If you wish to amend your complaint to include a claim of retaliation you should do so in writing through the same process.

49. Later that day, Ms. Moncreiff and Ryan spoke on the telephone. Ms. Moncreiff asked for a meeting, which Ryan refused, stating she did not see the necessity of having a face-to-face meeting. Ms. Moncreiff also spoke about how improperly Diaz has handled her complaints, but Ryan deflected any responsibility, stating "HR is supposed to do the investigation and there is nothing she could do to help me."

50. Also on January 7, 2019, Diaz e-mailed Ms. Moncreiff, stating:

Your physician's release form needs to state that you are cleared to return to work at Hoover. The limitations stated on the form you submitted stated that you could not work at Hoover, therefore, the doctor's did not clear you to return to the site.
Please see my prior emails as I have provided you with options on seeking other positions and transfer windows.

51.Ms. Moncreiff responded to Diaz's e-mail that night, stating:

Thank you for responding . I know that my restrictions say that I cannot return to Hoover. Given the circumstances, I'm sure you can appreciate my medical restrictions . SDUSD has an affirmative obligation to seek

COMPLAINT FOR DAMAGES

out and make known to the employee other possible positions that already exist and are open within the organization. It **cannot** place this responsibility on the employee, which is exactly what you did when you did not offer me those two resource jobs that I was qualified to perform while I was already on leave . I'm not trying to be difficult, I just want to have a job and work. I'm sure you can understand.

52. Four days later, Diaz e-mailed Ms. Moncreiff and indicated complaints of retaliation pertaining to adults are directed to Human Resources, not the Title IX officer, in this instance, Ryan. He also stated: "Please direct further concerns to me if you have any other questions regarding your clearance to return to work, transfer options, or concerns regarding staff to staff issues.

53. On January 14, 2019, Ms. Moncreiff contacted Diaz by telephone to discuss accommodations.

54. After the telephone call, Diaz e-mailed Ms. Moncreiff. He stated he understands Ms. Moncreiff is able to perform her duties as a teacher, just not at Hoover High School, but the transfer process does not begin until Spring. He also suggested Ms. Moncreiff would lose her job if she did not get a note from her doctor to return to Hoover High School—despite her stress—because she was close to exhausting her leave of absence.

55. Shortly after, Ms. Moncreiff responded to Diaz's e-mail, with Babineu and Ryan being included on the e-mail, correcting and clarifying the representations in Diaz's e-mail, and memorializing in detail the telephone she had with Diaz. In this e-mail, Ms. Moncreiff makes clear:

- Diaz instructed Ms. Moncreiff to contact him periodically to inquire about open job positions she could transfer to;
- Diaz informed Ms. Moncreiff no positions for math teacher was available at any middle or high school within SDUSD;
- Diaz informed Ms. Moncreiff she needed a doctor's note to return to work at Hoover High School because her contract is to work there;
- Ms. Moncreiff informed Diaz she is willing to work any job at any school;

COMPLAINT FOR DAMAGES

- Diaz informed Ms. Moncreiff about the transfer process and suggested she can either wait until May 2019 to apply for a position or quit and look for a job elsewhere.

56. Then, Ms. Moncreiff e-mailed Diaz again, with Babineau and Ryan included on the e-mail, asking what attempts they had made to assist her in getting back to work, stating: "Josue, please list all the attempts that district did to assist me in having a job back. I don't see anything being done. I really would like to know what you have done to help me out."

57. On February 11, 2019, having not heard from anyone at SDUSD, Ms. Moncreiff e-mailed Diaz to see if the meeting they had on December 14, 2018 was the official accommodation meeting, if there was anything else to be done because she had been without a job since October 2018, and to point out SDUSD had not done a thing to accommodate her.

58. Diaz responded shortly after, indicating they had indeed conducted the accommodation meeting and he sent her a summary of the meeting after that meeting. Neither Diaz nor anyone else has ever responded to Ms. Moncreiff about what they have done to accommodate her. In fact, SDUSD, Ryan, Diaz, Babineau, and Hoover High School administrators have left Ms. Moncreiff with a single choice: return to Hoover High School or seek a new job herself, exacerbating Ms. Moncreiff's emotional distress and anxiety.

59. No one has made any attempt to help Ms. Moncreiff; not even Conti would provide a letter of recommendation for Ms. Moncreiff to help her transfer. Conti refused Ms. Moncreiff's request for a letter of recommendation, stating she was not comfortable giving her a letter of recommendation, even though Conti was the last person who observed Ms. Moncreiff in the classroom, liked what she saw, and evaluated her positively. Ms. Moncreiff asked her why, but Conti never responded.

///

///

COMPLAINT FOR DAMAGES

60. To date, SDUSD has not changed its position, continuing to refuse to accommodate Ms. Moncreiff in any way or even engage Ms. Moncreiff in a good faith interactive process even though it knows it has done nothing to remedy the sexually hostile environment Ms. Moncreiff suffered and that Ms. Moncreiff still suffers emotionally and financially.

61. In fact, SDUSD has approached Ms. Moncreiff with what amounts to a take-it-or-leave it ultimatum: either return to work knowing no remedy to the sexually hostile environment has been made, or end her employment. And SDUSD provides this ultimatum knowing full well the conduct SDUSD subjected Ms. Moncreiff to constitutes sexual harassment and a hostile educational work environment under its own policies and will exacerbate, among other things, her serious emotional distress.

## FIRST CAUSE OF ACTION

## DELIBERATE INDIFFERENCE TO SEXUAL HARASSMENT IN VIOLATION OF TITLE IX

### (Against SDUSD)

62. Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

63. Ms. Moncreiff brings this cause of action against SDUSD.

64. The above-described sexually harassing conduct was sufficiently severe, pervasive, and objectively offensive to deprive Ms. Moncreiff of a work environment free from discrimination, harassment, and retaliation.

65. SDUSD created and or subjected Ms. Moncreiff to a hostile educational work environment in violation of Title IX because of Ms. Moncreiff's sex and or gender; because she was subjected to repeated sexual harassment by SDUSD students based on her sex and or gender; and because SDUSD lacked policies and procedures to properly investigate and or address the sexual harassment Ms. Moncreiff suffered at the hands of SDUSD students.

COMPLAINT FOR DAMAGES

66. SDUSD failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Ms. Moncreiff. SDUSD demonstrated this indifference in part by its failure to notify Ms. Moncreiff of any remedial measures taken.

67. SDUSD persisted in its actions and inaction even though it had actual knowledge of the harm Ms. Moncreiff suffered.

68. SDUSD engaged in a pattern and practice of discouraging and dissuading its teachers and other employees from initiating investigations relating to sexual harassment, particularly sexual harassment by students.

69. This policy and practice constitute disparate treatment of females and has had a disparate impact on female teachers and staff.

70. Despite actual and constructive knowledge of the above-mentioned discriminatory, harassing, and retaliatory actions, SDUSD failed to take reasonable steps to prevent and remedy the discriminatory, harassing, and retaliatory actions against Ms. Moncreiff, even though she complained numerous times to SDUSD.

71. As a direct and proximate result of SDUSD's above-described violations of Title IX, SDUSD has damaged Ms. Moncreiff because SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

72. As a further direct and proximate result of SDUSD's above-described violations of Title IX, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

73. As a further direct and proximate result of SDUSD's violations of Title IX, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

## RETALIATION BY WITHHOLDING PROTECTIONS OTHERWISE CONFERRED BY AND IN VIOLATION OF TITLE IX

### (Against SDUSD)

74. Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

75. Ms. Moncreiff brings this cause of action against SDUSD.

76. SDUSD discouraged Ms. Moncreiff from addressing the sexual harassment and hostile environment herself and refused to take adequate steps itself to address the sexual harassment and hostile environment Ms. Moncreiff suffered.

77. Despite actual and constructive knowledge of the above-mentioned discriminatory, harassing, and retaliatory actions, SDUSD failed to take reasonable steps to prevent the discriminatory, harassing, and retaliatory actions against Ms. Moncreiff, even though Ms. Moncreiff complained numerous times to SDUSD.

78. As a direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has damaged Ms. Moncreiff because SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

79. As a further direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

80. As a further direct and proximate result of SDUSD's actions, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

COMPLAINT FOR DAMAGES

# **THIRD CAUSE OF ACTION**

## **DISCRIMINATION—DISPARATE TREATMENT**

### **(Against SDUSD)**

81. Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

82. Ms. Moncreiff brings this cause of action against SDUSD.

83. Under the FEHA, it is unlawful for an employer, such as SDUSD, to engage in discrimination based on disability and engaging in protected activity. (Cal. Gov't Code § 12940(a).)

84. Ms. Moncreiff was an employee of SDUSD during the relevant period.

85. SDUSD was an employer of Ms. Moncreiff under the FEHA as SDUSD employs more than five persons. (Cal. Gov't Code § 12926(d).)

86. Ms. Moncreiff openly opposed all unlawful acts of discrimination based on her disability. In response to Ms. Moncreiff's opposition to such unlawful discrimination, SDUSD continued to discriminate against, harass, and retaliate against her, refused to accommodate her, refused to engage in the interactive process in good faith with her, and threatened her with other adverse action, including termination.

87. As a direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has damaged Ms. Moncreiff in that SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

88. As a further direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

COMPLAINT FOR DAMAGES

89.   As a further direct and proximate result of SDUSD's actions, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

## FOURTH CAUSE OF ACTION
### FAILURE TO ACCOMMODATE
#### (Against SDUSD)

90.   Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

91.   Ms. Moncreiff brings this cause of action against SDUSD.

92.   Ms. Moncreiff suffered from a disability under the FEHA in that she had emotional impairments limiting a major life activity, such as work, and making achievement of major life activities very difficult.

93.   Ms. Moncreiff is a qualified individual with a disability because she is an individual with a disability who, with or without reasonable accommodation, could have performed the essential functions of the employment position she desired and or held.

94.   SDUSD was aware of Ms. Moncreiff's disability when it refused to accommodate her, refused to engage in a good faith interactive process, and took other adverse action against her, such as threatening her with termination. SDUSD had a duty to accommodate Ms. Moncreiff's disability, but failed to accommodate her disability and her request for an accommodation under the FEHA.

95.   Ms. Moncreiff's status as a disabled individual was one substantial factor, which led to SDUSD's decision to refuse to accommodate her, refuse to engage in the interactive process, and otherwise take adverse action against her, including threatening termination.

///

///

COMPLAINT FOR DAMAGES

96.   As a direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has damaged Ms. Moncreiff because SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

97.   As a further direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

98.   As a further direct and proximate result of SDUSD's actions, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

## FIFTH CAUSE OF ACTION
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
### (Against SDUSD)

99.   Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

100. Ms. Moncreiff brings this cause of action against SDUSD.

101. Ms. Moncreiff suffered from a disability under the FEHA because she possessed emotional impairments that limited a major life activity, making achievement of a major life activity very difficult. Ms. Moncreiff also requested that she be allowed to be protected under the FEHA, but was refused, without any consideration by SDUSD to enter into the interactive process in good faith.

102. Ms. Moncreiff is a qualified individual with a disability who, with or without reasonable accommodation, could have performed the essential functions of the employment position that she desired and or held.

COMPLAINT FOR DAMAGES

103. SDUSD was aware of Ms. Moncreiff's disabilities when it refused to accommodate her, refused to engage in a good faith interactive process, and took other adverse action against her, including threatening termination. SDUSD had a duty to engage in an interactive process with Ms. Moncreiff in good faith regarding her disability and failed to engage in said process and her request to do so under the FEHA.

104. Ms. Moncreiff's status as a disabled individual was one substantial factor, which led to SDUSD's decision to refuse to accommodate her, refuse to engage in a good faith interactive process, and take other adverse action against her, including threatening termination.

105. As a direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has damaged Ms. Moncreiff because SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

106. As a further direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

107. As a further direct and proximate result of SDUSD's actions, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

///

///

///

///

///

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SIXTH CAUSE OF ACTION

## RETALIATION

### (Against SDUSD)

108. Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

109. Ms. Moncreiff brings this cause of action against SDUSD.

110. Under the FEHA, it is unlawful for an employer, such as SDUSD, to engage in retaliatory discrimination. (Cal. Gov't Code § 12940(h).)

111. Ms. Moncreiff was an employee of SDUSD during the relevant period.

112. As stated above, SDUSD is an employer covered by the FEHA because it employs more than five persons. (*See* Cal. Gov't Code § 12926(d).)

113. Ms. Moncreiff openly opposed all unlawful acts of discrimination, harassment, and retaliation based on her sex, gender, and disability; she requested accommodation, including job reassignment or transfer; and attempted to engage in a good faith interactive process. In response to this conduct, SDUSD refused to accommodate Ms. Moncreiff, refused to engage in a good faith interactive process with Ms. Moncreiff, and took other adverse action, including threatening termination, against her.

114. As a direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has damaged Ms. Moncreiff because SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

115. As a further direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

COMPLAINT FOR DAMAGES

116. As a further direct and proximate result of SDUSD's actions, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

## SEVENTH CAUSE OF ACTION

## FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION

### (Against SDUSD)

117. Ms. Moncreiff re-alleges and incorporates by reference, as though fully set forth herein, all preceding paragraphs of this Complaint.

118. Ms. Moncreiff brings this cause of action against SDUSD.

119. At all material times, Ms. Moncreiff was an employee of SDUSD during the relevant period.

120. Despite actual and constructive knowledge of the above-mentioned discriminatory, harassing, and retaliatory actions, SDUSD failed to take reasonable steps to prevent the discriminatory, harassing, and retaliatory actions against Ms. Moncreiff, even though Ms. Moncreiff complained numerous times to SDUSD.

121. As a direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has damaged Ms. Moncreiff because SDUSD wrongfully and tortiously deprived her of future wages, bonuses, benefits, and other compensation she was and remains entitled to, as well as career development and job prospects.

122. As a further direct and proximate result of SDUSD's above-described discriminatory conduct, SDUSD has deprived Ms. Moncreiff of the security, solace, and peace of mind for which she entered the employment relationship with SDUSD, and has thereby caused Ms. Moncreiff to suffer severe emotional distress, mental anguish, embarrassment, financial insecurity, and humiliation, all to her special damage in an amount per proof at trial.

COMPLAINT FOR DAMAGES

123. As a further direct and proximate result of SDUSD's actions, Ms. Moncreiff is entitled to recover and requests attorney fees and costs. (Cal. Gov't Code § 12965(b).)

## **PRAYER FOR RELIEF**

Ms. Moncreiff prays for judgment against SDUSD as follows:

1.  For general, special, and compensatory damages, including loss of past, present, and future earnings and benefits, in a sum to be determined per proof at time of trial damages;

2.  For prejudgment and post judgment interest at the legal rate;

3.  For costs of suit;

4.  For reasonable attorney fees; and,

5.  For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Ms. Moncreiff hereby requests a jury trial.

Dated:  May 31, 2019          **THE LAW OFFICE OF BRYCE A. DODDS**

By: _____
Attorney for Plaintiff Marianna Moncreiff
E-mail: bdodds@brycedoddslaw.com

COMPLAINT FOR DAMAGES